JOHN CARLSON vs. LYNN AND BOSTON RAILROAD COMPANY.

Essex. November 1, 1898. — January 6, 1899.

Present: FIELD, C. J., HOLMES, LATHROP, BARKER, & HAMMOND, JJ.

*Personal Injuries — Street Railway — Due Care.*

Where a street railway ran upon the right hand side of a highway laid out over marsh land, there was a footpath for travellers on the right hand side only of the track, and a wooden fence on the right hand side of the path. A., who was walking on the path in a dark night, the road being muddy and the wind blowing from the sea in his face, stopped twice within a distance of less than seven hundred feet, looking and listening to see and hear if anything was coming, and saw and heard nothing. At a point from two to three hundred feet beyond the place where he last looked, he was struck and injured by a car going in the same direction at the rate of twenty to twenty-five miles an hour, where there was a space of about twenty inches between the car and the fence. The way was not lighted, the headlight of the car was a small kerosene lamp, and he did not hear any sound before he was struck; the car went from one hundred to one hundred and twenty feet after it struck him, and the motorman was facing the left and talking with a passenger. *Held,* in an action by A. against the railroad corporation for his injury, that there was evidence of due care on his part.

TORT, for personal injuries occasioned to the plaintiff by being struck by one of the defendant's cars. Trial in the Superior Court, before *Hammond,* J., who allowed a bill of exceptions, in substance as follows.

The evidence tended to show that the defendant's cars, while running from Chelsea to Lynn, passed upon a highway laid out over the marshes; that upon a portion of the highway the defendant's tracks were on the left hand side of the road as one proceeds towards Lynn; that about two hundred feet before reaching that part of the turnpike which bridges a creek, being the same in its surface structure as all other portions of the turnpike, (there being no wooden bridge or draw across the creek,) there was a crossover in the road, so that the cars while going to Lynn passed from the left hand side to the right hand side of the road; that after the track passed over to the right hand side of the road it was laid out over that part of the turnpike which bridges the creek and along the highway to Lynn; that after passing beyond that portion of the turnpike crossing the creek, there was a beaten path at the right of the

track which lay about midway between the track and a wooden fence at the right of the track over which persons were in the habit of walking in going to and from Lynn; and that the distance between the fence and the right hand rail of the track was about two feet and nine inches at a point three hundred feet from the bridge, so called, and at a point about three hundred and fifty feet from the bridge the distance between the fence and the right hand rail was about three feet and a half, so that when a car with an overhang of thirteen inches passed the point on the path three hundred feet from the bridge there were twenty inches between the fence and the body of the car, and varying from twenty to twenty-nine inches up to the point three hundred and fifty feet from the bridge.

The plaintiff testified that the accident happened somewhere about three hundred feet from the bridge.

The evidence further tended to show that along this highway over the marshes the defendant had only one track, with turnouts at different places in the road, which was straight and level; that there were no trees upon the highway and no obstructions; that the plaintiff, in the evening of August 5, 1893, about fifteen minutes past nine o'clock, started to walk with a friend named Keeney from Chelsea to Lynn; that they walked upon the right hand side of the highway in the path all the way; that the road was muddy, and the night dark and cloudy, and the wind blew strongly from the water in their faces as they walked along; and that there was no path on any other portion of the way, and no sidewalk on any portion thereof other than the path.

The plaintiff testified that when he approached the crossover, he looked back and listened to see and hear if there was anything coming; that he did not see or hear anything, and walked along; that when just across the bridge he looked back again to see if anything was coming; that he saw and heard nothing; that when he so looked back he was about fifty feet on the Lynn side of the bridge; that Keeney at that time was near and behind him; that he continued to walk along, and the next thing that happened was that something struck him on the outside of the left thigh; that when he was hit he was from two hundred to three hundred feet beyond the place where he last looked back;

that he was struck by one of the defendant's cars going in the same direction in which he was going; that when he was hit he was facing towards Lynn; and that after the car hit him it ran thirty-five to forty yards beyond him.

On cross-examination, the plaintiff testified that he knew that in the night time an electric car generally carried a headlight; and that the car was generally lighted with electricity, so that the body of the car was light; that he knew that electric cars usually made a buzzing sound when they went along the road; and that he did not hear any such sound before the car struck him.

The plaintiff further testified that the last time when he looked around he was with Keeney; that at this time and after looking around Keeney stopped to light a pipe, and the plaintiff went ahead; that the plaintiff, when he was hit, was about two hundred feet ahead of Keeney; that Keeney did not call to the plaintiff to look out, and did not in any way notify him of the approach of the car; and that after the accident he saw that the headlight of the car, which was a small kerosene lamp, was lighted, but he did not see it before the accident.

The evidence further tended to show that at the left of the track there was an open space or roadway twenty or thirty feet in width upon which there were no railroad tracks; that at the time of the accident there were no carriages or conveyances upon the highway at the place of the accident other than the car; that at that time of night it was customary for carriages to be on the highway and for people to walk thereon; that the highway over the marshes was not lighted by any street light or other lights; and that the crossover in the road was from six hundred and seventy to six hundred and eighty feet from the place of the accident.

Ellsworth G. Keeney, a witness called by the plaintiff, testified that he walked from Chelsea on the night in question with the plaintiff, and a few feet behind in the path along the right hand side of the turnpike; that when they arrived at the crossover upon the highway they both stopped and looked back towards Boston to see if any car was coming, but saw and heard nothing; that after so looking they started along and crossed over the bridge, so called; that the plaintiff was ahead and he

about eight or ten feet behind ; that then both he and the plaintiff stopped and looked back to see if a car was coming, and to listen ; that up to that time he had heard and seen nothing ; that thereafter the plaintiff started along, and the witness stopped to light his pipe ; that as he lit his pipe he was standing with his back to the track and his face towards the fence, with his feet upon the pathway ; that while lighting the pipe the wind was blowing from the northeast diagonally across the highway ; that he stood there about a minute lighting his pipe ; that he looked back again and did not see or hear anything ; that the next thing he heard was a car going by him ; that he had not heard its approach, and had heard no gong ; that he did not draw back, and the car did not hit him ; that the next thing he heard after the car whizzed by was the crying out of a man ; that he started to go to him and found it was the plaintiff ; that the car was at that time forty yards or more ahead of the plaintiff ; and that when the car passed him it was going at the rate of about twenty-five miles an hour.

On cross-examination, the witness testified that he did not call to the plaintiff, because he did not have time ; that he heard no noise except the buzzing noise made by the car ; and that he thought that the plaintiff could look out for himself, and so he thought there was no need to warn him.

One Loynes, a witness called by the plaintiff, testified that, at the time of the accident, he was standing upon the front platform of the car, to the left and a little behind the motorman ; that shortly before the accident the motorman's face was turned toward him, and he was conversing with the motorman ; that while he was talking with the motorman he saw a dark object about six feet in front of the car ; that he then pointed towards it and exclaimed, " What is that ?" that the motorman and he were at that moment looking at each other ; that the witness was facing toward the right, and the motorman was facing toward the left ; that immediately the motorman turned and tried to set the brake, struck the gong, and said, " I have run over a man " ; that he attempted to stop the car, which struck the object that proved to be the plaintiff ; that the witness went back about thirty yards, and found the plaintiff and Keeney ; and that the car at the time of the accident was going at the rate of

twenty to twenty-five miles an hour, and when it went over the crossover in the road was going at the rate of fifteen miles an hour.

On cross-examination, the witness testified that the motorman, while the car was going over the crossover, rang the gong, possibly twice; that he noticed that the gong had rung many times as the car was going across the marsh; that as the car proceeded along to the place of the accident it made the ordinary buzzing noise, and one could have heard it a long way off had he listened; that the conductor had been riding inside the car and was inside the car at the time of the accident; that the conductor was thrown down when the motorman tried to stop the car; that the discovery by the witness of the shadow and his exclamation, and the striking of the plaintiff by the car, with the movement of the motorman, all happened as quick as a flash; and that at the time of the accident he was alone on the front platform with the motorman.

One Connelly, another witness called by the plaintiff, testified that he was on the car, which was going from fifteen to twenty miles an hour, nearer twenty; that he saw Loynes and the motorman apparently engaged in conversation, Loynes being at the left of the motorman, and the motorman turning towards Loynes; that this was their position at or about the time of the accident; that the first thing he noticed was a sudden jar; and that there was no slackening of the car before the jar was felt, and no gong was struck.

On cross-examination, he testified that he did not think one could walk in the beaten track of the path facing towards Lynn and not be hit by the car, but that the path was wide enough if the person walking therein stepped a little to one side towards the fence; and that a person could stand there in the path facing Lynn when the car came along and it would not strike him.

Two other witnesses for the plaintiff, both of whom were on the car at the time of the accident, corroborated, in substance, the testimony of Connelly.

The motorman testified that, as his car proceeded along the highway over the marsh, he rang his gong at frequent intervals; that when the car passed over the crossover in the road he rang the gong, and the car was then going at the rate of about three

miles an hour; that after the car passed the crossover it was going from eight and a half to nine miles an hour; that while the car was proceeding from the bridge to the place of the accident he was not talking with anybody, but his face was turned towards the front and he was looking ahead; that he first saw the plaintiff about twenty or twenty-five feet ahead of the car; that he immediately tried to stop the car by throwing the reverse and setting the brake, but that it was impossible to stop the car before it hit the plaintiff; that immediately upon seeing the plaintiff ahead of the car he called to him; and that as he called the plaintiff stepped to the right, but did not step sufficiently far for the car to clear him.

Upon cross-examination, the motorman testified that it was customary for express and grocery teams to pass over the turnpike at this time of night; that he was a spare hand, and had been employed but a few weeks by the defendant, and had made this trip five or six times only at this time of night; that he knew that this path was constantly used by people in walking to and from Lynn; that he called to the plaintiff so as to be heard a hundred feet away; and that the car proceeded sixty feet or more after it hit the plaintiff.

The conductor testified that he himself was a spare hand, and had been over the road about half a dozen times before the accident; that at the time of the accident he was riding inside of the car standing up, and the first thing which he noticed was the sudden jerking of the car, which was so violent as to throw him down, and substantially at the same time the car went over an object; that somebody said that they had run over a man, and he heard nothing else; and that the car went seventy-five or a hundred feet after it struck the plaintiff before it stopped.

At the close of the evidence, the defendant requested the judge to rule that, upon the evidence, the plaintiff could not recover. The judge refused so to do; and the defendant excepted.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*W. I. Badger*, for the defendant.

*F. D. Allen*, for the plaintiff, was not called upon.

FIELD, C. J.    The single exception is to the refusal of the presiding justice to rule that the plaintiff could not recover.

The counsel for the defendant in his argument before this court concedes that the evidence warranted the jury in finding negligence on the part of the defendant, but he contends that there was not sufficient evidence to warrant the jury in finding that the plaintiff was in the exercise of due care. There was evidence that the plaintiff was walking in the only path or walk in the highway which was intended for travellers on foot, and which it was customary for people to walk in; that the night was dark, the road muddy, and the wind blowing from the sea in his face as he walked along; that the plaintiff listened to hear if anything was coming and heard nothing, and within a distance of less than seven hundred feet turned round twice and looked to see if anything was coming and saw nothing; that when he was hit by the car he was from two to three hundred feet beyond the place where he last looked. The track of the defendant at the point where the plaintiff was injured was on the right hand side of the highway in going from Chelsea to Lynn. On the right hand side of the track was the path for foot travellers, and on the right hand side of the path was a wooden fence. Between the side of a passing car and the fence at the place where the plaintiff was injured was a space of about twenty inches. The car was going from twenty to twenty-five miles an hour. There was evidence that the headlight of the car was a small kerosene lamp; that the highway was not lighted; and that the crossover of the track from the left to the right hand side of the highway was about six hundred and seventy to six hundred and eighty feet before the place where the plaintiff was injured. The car after it hit the plaintiff went a considerable distance beyond — estimated from seventy-five to one hundred and twenty feet — before it was stopped. There was evidence that almost up to the time of the accident the motorman was facing to the left hand side of the highway, and not to the right. The evidence of the plaintiff's conduct, as testified to by himself and by his companion Keeney, seems to us evidence of due care on his part. The speed and manner in which the evidence showed that the car was run, on a dark night on a track so near to the path for foot travellers, made travelling on the path under the circumstances shown dangerous for even careful persons.                                      *Exceptions overruled.*